IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENESIS HEALTH CLUBS, INC., )
)
            Plaintiff, )
)
v. )   Case No. 13-1269-JWL
)
LED SOLAR & LIGHT COMPANY, )
)
           Defendant. )
)
_____)

**MEMORANDUM AND ORDER**

In this diversity action governed by the Uniform Commercial Code (UCC)[1], plaintiff brings claims for breach of contract and breach of express and implied warranties relating to its purchase of lights from defendant. This matter comes before the Court on defendant's motion for summary judgment (Doc. # 46). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to plaintiff's claim for breach of contract and its claims for damages for return of the purchase price and the costs of an electrician, and defendant is awarded

---

[1] Both parties have applied Kansas's version of the UCC in their briefs. *See* K.S.A. § 84-1-101 *et seq.* Because the parties' contract involved the sale of lighting for plaintiff's facility in Kansas and was apparently executed in Kansas, the Court will also apply Kansas law. *See* K.S.A. § 84-1-105(1) (Kansas UCC applies to transactions bearing an appropriate relation to Kansas); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in diversity action, forum state's choice-of-law rules govern which state's substantive law applies); *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 142 (2002) (Kansas applies the law of the place of contracting to interpret a contract).

judgment on those claims. The motion is otherwise denied.

## I.     **<u>Summary Judgment Standards</u>**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon

2

the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II. **Breach of Contract**

Defendant seeks summary judgment on plaintiff's claim for breach of contract on the basis that the claim is redundant of plaintiff's warranty claims. *See Lohmann & Rauscher, Inc. v. YKK (U.S.A.) Inc.*, 477 F. Supp. 2d 1147, 1153 (D. Kan. 2007) (Lungstrum, J.) (granting summary judgment on a contract claim that was not factually distinct from the plaintiff's warranty claims). In response, plaintiff argues that its contract claim is distinct from its warranty claims because the contract claim includes allegations that defendant breached by failing to deliver the lights in a timely fashion and that defendant breached the covenant of good faith and fair dealing that is implied in every contract. Plaintiff may not assert any such claims for breach of contract, however,

3

because those claims are absent from the pretrial order, which now governs the case. *See Youren v. Tintic School Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003).

In the pretrial order, plaintiff alleges that defendant "breached the parties' contract by providing defective lighting that often did not work, did not provide the energy savings guaranteed and, as such, impacted [plaintiff's] cash flow (Count I)." These same allegations are encompassed within plaintiff's claims for breach of warranty as set forth in the pretrial order (which also includes claims for breach of warranty relating to color uniformity). Plaintiff also argues that it asserts that defendant breached its contract because the tips of the lights were not sufficient and because lights burned out prematurely. Those allegations merely describe why the lights did not work properly, however. Plaintiff does allege in the pretrial order that the defects in the lights include the fact that the lights would burn out prematurely, and those defects form a basis for both the contract claim and the warranty claims. Accordingly, plaintiff has not shown that its contract claim is factually distinct from its warranty claims, and the Court therefore grants summary judgment on the contract claim in favor of defendant.

### III. <u>Breach of Warranty – Energy Savings</u>

#### A. *Implied Warranty of Merchantability*

Plaintiff asserts claims for breach of implied and express warranties based on the alleged failure of the lights to produce a certain energy savings in the facility. Defendant seeks summary judgment on plaintiff's claim for breach of the implied warranty of

4

merchantability as it relates to energy savings. Defendant alleges, without citation to authority, that a product's energy savings cannot fall within that implied warranty's scope. As plaintiff points out, however, the relevant statute provides that to be merchantable goods must "pass without objection in the trade under the contract description," *see* K.S.A. § 84-2-314(2)(a), and the parties' contract provided that defendant warranted "watt for watt exchange a minimum of 35% deduction in wattage consumption." In its reply brief, defendant has not even attempted to explain why an implied warranty would therefore not exist under the statute to the extent of the warranty contained in the contract. Accordingly, plaintiff may pursue a claim for breach of the implied warranty of merchantability to the extent of the 35-percent warranty contained in the contract, and the Court denies this basis for summary judgment.

### B. *Express Warranty*

Plaintiff also pursues a claim for breach of express warranty based on its alleged lack of energy savings from the use of defendant's lights. Defendant does not dispute that it expressly warranted in the contract a "35% deduction in wattage consumption" from the lights alone,[2] but it does argue that it made no warranty regarding either a reduction in wattage for plaintiff's facility generally or a savings of a particular amount

---

[2]Defendant states in its brief it is undisputed that their lights satisfied the warranty of a 35-percent deduction in wattage consumption of the lights alone, but it has not cited evidence to support that fact. (The testimony cited by defendant relates only to the wattage of lights installed to replace some of defendant's lights.) Thus, defendant has not met its burden to show an absence of material fact on that question.

5

of money. Plaintiff claims that defendant, through its agent, Bruce Redinger, did expressly warrant a savings in energy costs at its facility sufficient to cover its payments on the loan that it received to pay for the lights.

1. AGENCY

Defendant first argues that Mr. Redinger's statements to plaintiff did not create an express warranty by defendant because Mr. Redinger was not its agent. Defendant argues that Mr. Redinger, who owns his own company, served only as a dealer, and it points to a lack of any evidence that Paul Arnone, defendant's representative involved in the project, communicated to plaintiff that Mr. Redinger was acting as defendant's agent.

The Court concludes, from a review of the evidence submitted by the parties, that an issue of fact remains for trial concerning whether Mr. Redinger acted as either an actual or apparent agent for defendant. In particular, the Court notes the following evidence: Mr. Redinger took the lead in communicating with plaintiff concerning specifications and warranties for the lights; Mr. Redinger referred to defendant's facilities as "our" facilities; it appeared to plaintiff from the statements and conduct of Mr. Redinger and Mr. Arnone that Mr. Redinger was acting with authority from defendant; Mr. Arnone referred to Mr. Redinger at one time as the "account manager" for plaintiff's project; Mr. Arnone was involved in various communications regarding the project, but never indicated that Mr. Redinger did not have authority to make statements concerning defendant's responsibilities; and Mr. Redinger stated in his

6

affidavit that Mr. Arnone authorized him to make the statements that he did to plaintiff on behalf of defendant.[3] In addition, the Court notes that plaintiff did not purchase the lights from Mr. Redinger as a dealer, but instead entered into a contract directly with defendant. In keeping with the applicable summary judgment standard, the Court must weigh the evidence in the light most favorable to plaintiff, the non-moving party, and so weighed, that evidence precludes a ruling that Mr. Redinger could not have been acting as defendant's agent as a matter of law. Accordingly, the Court denies this basis for summary judgment.

## 2. DISCLAIMER OF WARRANTY

Defendant also disputes that Mr. Redinger made any such warranty concerning monetary savings, based on his disclaimer contained in an e-mail sent to plaintiff prior to plaintiff's execution of the contract with defendant. In that e-mail, in response to plaintiff's question about the contract's warranty of a 35-percent deduction in wattage, Mr. Redinger explained that the warranty referred to wattage of the lights alone. He

---

[3]Defendant argues that the Court may not consider Mr. Redinger's affidavit on this issue, based on the Kansas Supreme Court's statement in *Allison v. Borer*, 131 Kan. 699 (1930), that "[a]cts and declarations of agents are inadmissible to prove agency." *See id.* at 703. First, it is not clear that the supreme court, by that statement, meant to bar not only contemporaneous statements by the alleged agent at the time he purportedly acted for the alleged principal, but also later testimony by the agent. Moreover, in *Richards v. Newstifter*, 70 Kan. 350 (1904), which defendant has cited on this point and which was cited in *Allison*, the supreme court made clear that the alleged agent's declarations may be considered with respect to the question of the principal's ratification of the agent's conduct. *See id.* at 351-52. On this issue of agency, the Court has not relied solely on the affidavit of Mr. Redinger, and other evidence of agency exists here; accordingly, the Court may conclude that an issue of fact remains for trial here.

7

noted that a calculation of a 49,110-watt decline for the lights multiplied by plaintiff's electric utility rate at that time yielded a monthly savings of $3,928.80, which "seem[ed] to be a very safe number" to justify the purchase. He stated, however, that he could not guarantee that monetary figure or a 35-percent reduction in plaintiff's entire utility bill because of possible future rate changes, the fact that not every bulb was at full capacity wattage, and the fact that he did not know about the portion of plaintiff's electricity usage related to plaintiff's HVAC system (and thus unrelated to the lighting). Defendant argues that the e-mail demonstrates as a matter of law that Mr. Redinger did not warrant a 35-percent reduction in the wattage for the facility as a whole or savings of a particular amount.

The Court rejects this argument for summary judgment. Mr. Redinger stated in his affidavit that he, on behalf of defendant, did represent to plaintiff that plaintiff's "overall energy savings would be sufficient to cover the additional expense [plaintiff] would incur by obtaining a loan to purchase the LED bulbs," and that plaintiff's purchase of the lights "with a 49,100 watt decline in consumption would result in a $3,928.80 monthly savings." These statements by Mr. Redinger appear to contradict the statements in his e-mail. Nevertheless, because the Court must weigh the evidence in the light most favorable to plaintiff at this stage, it must credit the affidavit.[4] Therefore, the Court cannot conclude as a matter of law that Mr. Redinger made no express

---

[4]Defendant has not cited to any deposition testimony by Mr. Redinger concerning the e-mail that would contradict his affidavit.

8

warranty concerning a reduction in plaintiff's utility bills.

### 3. OPINION

Finally, defendant argues that any such statement by Mr. Redinger about plaintiff's future monetary savings would represent an opinion and not a statement of fact as required for creation of an enforceable warranty. In *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311 (1974), the Kansas Supreme Court summarized Kansas law on this issue as follows:

> In the sale of goods representations of fact made in the course of negotiations which are capable of determination are warranties, but mere expressions of opinion, belief, judgment or estimate by a dealer in sales talk are not. Where opinions are coupled with representations of fact which relate to such matters and are susceptible of exact knowledge, they constitute more than a mere opinion and are properly regarded as representations of fact, and, to the extent they are representations of fact, they constitute warranties.

*See id.* at 311, syl. ¶ 4. Defendant argues that any promise about future savings on plaintiff's energy bills was a mere opinion, for the same reasons set forth in Mr. Redinger's e-mail—the rate could change in the future and plaintiff's energy consumption unrelated to the lighting was unknown. In his affidavit, however, Mr. Redinger explains how plaintiff's savings could easily be calculated. Therefore, the Court concludes that an issue of fact remains concerning whether the alleged express warranty represented a mere statement of opinion by defendant or whether it concerned a factual matter capable of determination, and accordingly, the Court denies this basis for summary judgment.

9

## IV. **Breach of Warranty – Color**

### A. *Implied Warranty of Merchantability*

Plaintiff asserts that defendant breached the implied warranty of merchantability by selling lights that were not uniform in color. Defendant argues that any such defect does not fall within this implied warranty because color does not go to the "core" function of a light. The Court rejects this argument for summary judgment. The implied warranty of merchantability requires that goods "run . . . of even kind [and] quality." *See* K.S.A. § 84-2-314(d). Defendant has not cited any authority to suggest that this particular requirement for merchantability requires that the issue relate to the core function of the goods, and the Court cannot at any rate rule as a matter of law that a light's color does not implicate a core function. The Court denies this basis for summary judgment.

### B. *Express Warranty*

Plaintiff also asserts that defendant breached its express warranty, made by Mr. Redinger, that the lights would be uniform in color and would be white without any "yellowish hue". Defendant first asserts that Mr. Redinger was not acting as its agent when he made any such warranty, but, as set forth above, the Court concludes that an issue of fact remains for trial on that issue.

Defendant also argues that evidence of any such warranty is barred by the parol evidence rule, in light of the statement in the parties' contract that "[a]ny other verbal or written proposals or agreements preceding this proposal are void." K.S.A. § 84-2-202

10

provides the applicable law, as follows:

> Terms with respect to which the confirmatory memorandum of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> . . .
>
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

*See id.* The alleged express warranty concerning color would not conflict with any term in the parties' written contract, but defendant argues that the contract may not be supplemented with such a warranty because the contract was intended to be the "complete and exclusive statement of the terms of the agreement," as shown by the statement in the contract that previous "proposals or agreements" were void.

The Court rejects this basis for summary judgment, as it concludes that a question of fact remains concerning the intent of the parties in executing the agreement. *See Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 763 (10th Cir. 1983) (parties' intent under section 84-2-202 presents a question of fact for the court to decide before admitting parol evidence). The Court cannot conclude as a matter of law that the parties intended that the contract would be the exclusive statement of all terms and that any previous express warranties would be nullified. Defendant has not pointed to any evidence of the parties' intent in this regard other that the statement in the contract, and

11

in the absence of such evidence, the Court will not interpret that statement as a disclaimer of all prior warranties. The Court notes that the statement refers only to "proposals or agreements," it immediately follows the statement that "[t]his proposal" is valid for 30 days, and the proposal above the parties' signatures involved only the number, wattage, and cost of the lights; thus, the statement is most reasonably read to disclaim only proposals or agreements concerning those terms. Moreover, as noted by plaintiff, even if the contract were ambiguous on this issue, it would be interpreted against the drafter, which appears to be defendant in this case. *See Liggatt v. Employers Mutual Cas. Co.*, 273 Kan. 915, 921 (2002). Moreover, the cases cited by defendant involve more explicit disclaimers of warranties and are therefore distinguishable from the present case. *See BHC Dev., L.C. v. Bally Gaming, Inc.*, 2013 WL 6261430, at *2, 3, 9 (D. Kan. Dec. 4, 2013) (agreement disclaimed all warranties and contained a merger clause that provided that the agreement constituted the entire understanding and contract between the parties); *Ray Martin Painting, Inc. v. Ameron, Inc.*, 638 F. Supp. 768, 773 (D. Kan. 1986) (contract provided that no other agreement or understanding could modify the warranty); *AgriStor Leasing v. Meuli*, 634 F. Supp. 1208, 1219 (D. Kan. 1986) (disclaimer stated that no other express warranty had been made); *Jordan v. Doonan Truck & Equip., Inc.*, 220 Kan. 431, 432 (1976) (disclaimer stated that there was no warranty).

### C. *Need for Expert Testimony*

Finally, defendant notes that plaintiff has not designated an expert to opine on the

12

issue of the uniformity of the lights' color, and it argues that plaintiff may not pursue this claim in the absence of such expert testimony. The Court rejects this argument as a basis for summary judgment. "There is no fixed or general rule that requires expert testimony." *See Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979). Defendant relies on *Voelkel v. General Motors Corp.*, 846 F. Supp. 1468 (D. Kan. 1994), in which the court concluded that expert testimony was required regarding a particular automobile defect. *See id.* at 1477 n.3. The court noted in *Voelkel*, however, that expert testimony is required only if a lay factfinder lacks the competency and is not equipped by common knowledge and skill to draw proper conclusions concerning the issue at hand. *See id.* (citing Kansas cases). The Court cannot say at this stage that expert testimony is required for consideration of this issue; accordingly, the Court declines to bar the claim at this juncture.

### V. **Breach of Warranty – Defective Lights**

Plaintiff also claims that defendant breached the implied warranty of merchantability because the lights did not operate properly. Defendant's only argument for summary judgment on this claim is that expert testimony is required to prove this claim. The Court rejects this argument for the same reason stated in the preceding section. Moreover, plaintiff has designated two non-retained experts who will testify concerning the operation of the lights. In its reply brief, defendant complains that plaintiff has belatedly "trotted out" these experts to give "expanded" opinions to defeat

13

summary judgment. The Magistrate Judge ruled, however, that plaintiff could make those expert designations out of time, and defendant did not file a timely objection to that ruling. Nor has defendant demonstrated that these experts' proffered opinions go beyond those permitted by the Magistrate Judge or are otherwise objectionable. Accordingly, the Court denies this basis for summary judgment.

**VI.　Damages**

　　*A.　Purchase Price*

As set forth in the pretrial order, plaintiff seeks to recover as damages its purchase price for the lights, in the amount of $82, 271.50. Defendant seeks summary judgment on that claim. Defendant argues that plaintiff may not recover the purchase price under the UCC unless it properly rejected or revoked its acceptance of the lights, and that plaintiff did not reject or revoke acceptance in this case. The Court agrees that defendant is entitled to summary judgment on this basis.

K.S.A. § 84-2-711 provides that a buyer may cancel a contract and recover so much of the purchase price that has been paid if it "rightfully rejects or justifiably revokes acceptance." *See id.* If a buyer has accepted goods (that is, has not rejected or revoked acceptance), it may recover as damages for breach of warranty the difference between the value of the goods as accepted and their value if they had been as warranted, in addition to incidental and consequential damages. *See* K.S.A. § 84-2-714. Thus, a buyer may only recover the purchase price and cancel the contract if it has properly

14

rejected the goods or revoked acceptance of the goods. *See* 1 Barkley Clark, et al., *The Law of Product Warranties* §§ 7:20, 7:21, 7:26 (2d ed. 2002).

In opposing summary judgment, plaintiff does not dispute that it must have rejected or revoked acceptance of the lights in order to recover the purchase price. Plaintiff argues, however, that it did reject or revoke acceptance in this case. Specifically, plaintiff argues that once the lights were determined to be defective, it gave notice of defendant's breach in accordance with K.S.A. § 84-2-607(3)(a), which provides that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See id.* Plaintiff argues that it communicated with defendant concerning the breach and allowed defendant the opportunity to cure the breach, and that when defendant failed to effect a cure, it began to return the lights and revoked or rejected at that time. Plaintiff has not pointed to any evidence, however, that it actually did revoke its prior acceptance of the lights. Plaintiff has provided evidence of communications between the parties concerning alleged defects in the lights; but plaintiff has not provided any evidence of any communication in which it stated that it was canceling the contract or rejecting acceptance of the lights or revoking prior acceptance of the lights.

K.S.A. § 84-2-606 provides that acceptance of goods occurs when the buyer fails to make an effective rejection after a reasonable opportunity to inspect the goods, or when the buyer does any act inconsistent with ownership of the goods by the seller. *See*

15

*id.* A buyer may reject goods within a reasonable time of delivery with notice to the seller. *See* K.S.A. § 84-2-602(1). The Court concludes as a matter of law that plaintiff did not reject the lights delivered by defendant. Plaintiff has cited no evidence that it gave any notice to defendant that it was rejecting the goods. In fact, plaintiff's argument that it gave notice of breach under K.S.A. § 84-2-607(3)(a) supports the conclusion that plaintiff accepted the lights, as that subsection addresses notice of breach after acceptance. *See id.* Moreover, plaintiff does not dispute that it used and continues to use some of the lights, and such use without compensation to defendant is inconsistent with ownership of the lights by defendant. *See* K.S.A. § 84-2-606.

The Court also concludes as a matter of law that plaintiff did not effectively revoke acceptance of the lights. Revocation of acceptance requires notice of the revocation to the seller. *See* K.S.A. § 84-2-608(2). Again, plaintiff may have notified defendant of a breach, but it did not notify defendant that it was revoking acceptance and canceling the contract, and the comments to section 84-2-608 indicate that mere notice of a breach under the preceding section is generally not sufficient to effect revocation of acceptance. *See id.* cmt. 5; *id.* Kan. cmt. 3 (referring to Official Comment 5 for the required contents of the notice of revocation); *see also* 1 Barkley Clark, *supra,* § 7:14 (more is required for revocation of acceptance than simple notice of breach; imposition of separate notice-of-breach requirement in section 2-607 shows intent of drafters for something more in section 2-608(2)); James J. White & Robert S. Summers, *Uniform Commercial Code* § 9-4, at 433 (6th ed. 2010) (mere notification of breach under section

16

2-607(3) is not enough to effect revocation of acceptance). Nor does plaintiff's return of a small portion of the lights constitute revocation of acceptance. *See* K.S.A. § 84-2-608 Kan. cmt. 3 (citing to *Delhomme Indus. Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177 (5th Cir. 1984), for the proposition that a buyer who "resells" goods back to the seller has not revoked acceptance).

In short, plaintiff has not pointed to any evidence indicating that it did more than try to obtain conforming lights from defendant or return a few of the lights, and that it instead chose specifically to cancel the contract and to reject or revoke acceptance of the lights. Accordingly, plaintiff may not recover the purchase price of the lights, and defendant is awarded summary judgment on that claim by plaintiff.

The Court notes that because plaintiff did not reject or revoke acceptance of the goods, it would ordinarily be entitled to seek damages under K.S.A. § 84-2-714 for the difference between the value of the lights as delivered and the value of the lights if as warranted. Plaintiff has not asserted any such claim in the pretrial order, however, or provided any evidence of such difference in value. Accordingly, plaintiff is barred from asserting any such claim for the difference in value. *See* 1 Barkley Clark, *supra*, § 7:26 ("If the buyer fails to present any evidence as to the value differential under § 2-714, he is doomed.").

### B.     *Costs of Electrician*

Plaintiff also seeks damages in the amount of $7,565.00, which, according to the pretrial order, plaintiff "spent to hire an independent electrician to install the lighting in

17

accordance with [defendant's] requirements." Defendant seeks summary judgment on this claim on the basis that such costs did not result from any alleged breach, for the reason that the parties' contract called for plaintiff to bear installation costs. Plaintiff does not dispute that defendant was not required to install the lights as part of the contract. Nevertheless, plaintiff argues that it may recover this cost as incidental or consequential damages suffered as a result of defendants' breaches, which caused it to "have to pay to have the facility and fixtures rewired or retrofitted to accommodate other bulbs," and to "incur additional costs to have the bulbs removed from the fixtures by an electrician and have new bulbs installed in their place." Thus, plaintiff argues in its brief that its claim for $7,565.00 relates to the cost to fix things after the original installation of the lights. Plaintiff's representative, however, testified that $7,565.00 represented the cost of hiring the electrician to install the lights initially, which cost plaintiff was required to bear. Plaintiff has not provided any other basis or authority to support recovery of that amount. Accordingly, defendant is granted summary judgment on this claim for damages.[5]

### C. *Costs Related to Plaintiff's Loan*

Finally, defendant argues that plaintiff may not recover damages for its lost energy savings because it made no such express warranty relating to plaintiff's utility

---

[5]The Court need not address whether plaintiff could seek as incidental or consequential damages to recover any costs for an electrician to fix things at the facility or to install replacement lighting, as plaintiff has not included any such claim for damages in the pretrial order.

bills. The Court has already concluded that defendant is not entitled to summary judgment on that express warranty claim; accordingly, there is no basis for summary judgment on this claim for damages.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 46) is **granted in part and denied in part**. The motion is granted with respect to plaintiff's claim for breach of contract and its claims for damages for return of the purchase price and the costs of an electrician, and defendant is awarded judgment on those claims. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 26th day of March, 2014, in Kansas City, Kansas.

                                      s/ John W. Lungstrum
                                      John W. Lungstrum
                                      United States District Judge

---

[6] In its motion for summary judgment, defendant has not addressed plaintiff's claims in the pretrial order that it "has been damaged as its employees have spent months trying to remedy the problem created by [defendant's] breach" and that "its business has been damaged in the location where the defective lighting was installed."